IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUHAMMAD WALIYUD-DIN<br>a/k/a "William R. Hoskins,"<br>*Petitioner*<br><br>v.<br><br>THE ATTORNEY GENERAL OF<br>THE STATE OF PENNSYLVANIA,<br>*Respondent* | :<br>:<br>: CIVIL ACTION<br>:<br>:<br>: NO. 10-5851<br>:<br>:<br>: |

**MEMORANDUM**

PRATTER, J.                                                                                          OCTOBER 22, 2020

Muhammad Waliyud-Din, a/k/a William R. Hoskins, moves to amend or alter judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure. The Commonwealth did not file a response to the motion. For the reasons that follow, the Court denies the motion.

### BACKGROUND AND PROCEDURAL HISTORY

In 1976, Mr. Waliyud-Din was convicted of first-degree murder, criminal conspiracy, and weapons offenses. In the intervening 45 years, he was awarded a second trial in state court, challenged his sentence on direct appeal (which the Superior Court affirmed), filed two successive PCRA petitions (each dismissed as untimely), directly appealed the dismissal of the second PCRA petition, filed a federal habeas petition (the dismissal of which is now the basis of the pending motion), filed a third PCRA petition (also dismissed as untimely), and filed a fourth PCRA petition (which is pending and is based on the same actual innocence argument he advances in this motion).

Mr. Waliyud-Din filed a federal habeas petition in 2010. This Court adopted Magistrate Judge Hey's Report and Recommendation and dismissed the petition as untimely. Doc. No. 16. Mr. Waliyud-Din is now seeking to re-open the prior habeas petition and to adjudicate the claims based on new evidence which he claims shows he is actually innocent. He alleges that he obtained

1

new exculpatory evidence on August 30, 2019 and March 2, 2020 that had not been disclosed by the Commonwealth during his state proceedings. He contends that a previously undisclosed witness statement and the results of a forensic analysis of tire tracks left at the crime scene exonerate him but were withheld from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). And, he relies on a change in decisional law which post-dates his federal habeas petition. *McQuiggin v. Perkins*, 569 U.S. 383 (2013), recognized an actual innocence exception to the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA) statute of limitations. 28 U.S.C. § 2244(d)(1).

Because his federal habeas petition was dismissed as untimely, the merits were never adjudicated, and Petitioner contends that the dismissal has "perpetuate[d]" a "vehicle of injustice." Doc. No. 24 at 13. Petitioner, Mr. Waliyud-Din, now moves under Federal Rule of Civil Procedure 60(b)(6).

Contemporaneous with the pending motion, Petitioner filed an application for permission to file a second or successive § 2254 petition. On August 27, 2020, the Third Circuit Court of Appeals denied his application. Doc. No. 25 (entered Sept. 8, 2020). The Third Circuit found he failed to make a prima facie showing that his claim relied on a "new rule" of constitutional law or the factual predicate for the claim could not have been discovered through the exercise of due diligence. The appellate court's denial does not provide further analysis.

## STANDARD OF REVIEW

Rule 60 governs the relief from a final judgment, order, or proceeding. Fed. R. Civ. P. 60. Pertinent here, Rule 60(b)(6) is a catch-all provision that permits a court to grant relief from a final judgment based on any "reason that justifies relief," other than the five articulated grounds in (b)(1)

2

through (5).[1] When considering a Rule 60(b)(6) motion, the Court is directed to use a "flexible, multifactor approach...that takes into account all the particulars of a movant's case." *Cox v. Horn*, 757 F.3d 113, 122 (3d Cir. 2014). Granting such a motion, however, is warranted only in the "extraordinary circumstance[] where, without such relief, an extreme and unexpected hardship would occur." *Id.* at 120.

## DISCUSSION

### I.  Procedural Bar

As a threshold matter of jurisdiction, the Court must determine whether Petitioner's Rule 60(b) motion is in substance a successive habeas petition. *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005). The Supreme Court in *Gonzalez* expressed concern that petitioners may file Rule 60(b) motions to "circumvent AEDPA's requirement[s] that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts" and that a "successive habeas petition be pre-certified by the Court of Appeals." *Id.* at 531-32; 28 U.S.C. §§ 2244(b)(2), (3). Where the Rule 60(b)(6) motion contains a "claim," the motion is really another habeas application. *Gonzalez*, 545 U.S. at 524. The Supreme Court noted that, in most cases, determining whether a motion advances a claim is "relatively simple": a motion seeking to add a new ground for relief is one such example. *Id.* at 532.

Where, however, the Rule 60(b)(6) motion does not assert or reassert claims of error in the state conviction, the motion is not treated as a successive habeas petition. *Id.* at 538. And where

---

[1]  Rule 60(b) also authorizes relief for the following grounds: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; and (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable. Fed. R. Civ. P. 60(b)(1)-(5).

3

the motion challenges the district court's failure to reach the merits of the petition, the district court need not pre-certify the motion to the appellate court.

The pending Rule 60(b)(6) motion emphasizes that Petitioner's 2010 federal petition[2] "was not adjudicated on its merit." Doc. No. 24 at 6, 11. Construing the motion liberally as the Court must, it appears as though Petitioner challenges the dismissal of his federal petition on procedural statute of limitations grounds. This Court previously ruled that his petition was time barred, and thus did not reach the substance of the relief sought.

Petitioner contends that intervening changes in decisional law create an exception to AEDPA's procedural bar. Specifically, *McQuiggin v. Perkins* held that petitioners who make a "convincing actual innocence claim" may proceed despite procedural bars, including statutes of limitations. 569 U.S. 383, 392 (2013). And, Petitioner contends that "newly discovered evidence"—the witness statement of Pearl Perkins and the forensic report of tire tracks—establishes his actual innocence. Because neither the pending motion nor the federal judgment dismissing the first petition as untimely "substantively addresses federal grounds for setting aside the movant's state conviction," the Rule 60(b)(6) is not properly characterized as a second or successive habeas petition.[3] *Gonzalez*, 545 U.S. at 533; *Parham v. Klem*, 496 F. App'x 181, 184 (3d Cir. 2012) (petitioner seeking to equitably toll statute of limitations with a gateway claim of

---

[2] Among other things, the 2010 petition alleged a "violation of the laws" (the Interstate Agreement on Detainers Act), ineffective counsel relating to waiver of rights under the Detainers Act, and erroneous denial of his motion as untimely by the PCRA court based upon newly discovered evidence. Doc. No. 1 at 10-11.

[3] Were the Court to conclude that the Rule 60(b)(6) motion was in substance a second or successive habeas petition, it would lack the subject matter to consider the motion. 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). As noted above, the Third Circuit has already denied Petitioner's application to file.

4

actual innocence did not "seek vindication of a claim"). Accordingly, Petitioner did not need to seek leave to file from the Third Circuit. That alone, however, is not the end of the inquiry.

## II. Relief Under Rule 60(b)(6)

To warrant relief under Rule 60(b)(6) and justify reopening a final judgment, a petitioner must demonstrate "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535; *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977). Construing the motion liberally, Petitioner seeks relief on the basis that the Supreme Court's 2013 decision in *McQuiggin* recognized an exception to AEDPA's statute of limitations upon a credible showing of actual innocence. 569 U.S. 383 (2013). At the time his federal petition was pending, *McQuiggin* was not yet decided nor had the Third Circuit announced that a change in decisional law could serve as an "extraordinary circumstance." Doc. No. 24 at 21; *Satterfield v. Dist. Att'y of Phila*, 872 F.3d 152 (3d Cir. 2017). Petitioner submits he should now be able to "override the AEDPA time limitations" (which prompted dismissal of his first petition) because newly discovered evidence allegedly establishes his actual innocence.

The Third Circuit Court of Appeals did hold in *Satterfield* that *McQuiggin* effected a change in decisional law. *Satterfield*, 872 F.3d at 159. But finding that this change in the law may properly undergird a Rule 60(b)(6) motion is considerably less certain. The Third Circuit has noted repeatedly that "intervening changes in the law *rarely* justify relief from final judgments under 60(b)(6)." *Cox v. Horn*, 757 F.3d 113, 121 (3d Cir. 2014). *Satterfield* provides the court with a roadmap to analyze a Rule 60(b)(6) motion; it does not compel relief. Instead, the Third Circuit instructed district courts to consider "the nature of the change along with" "the full panoply of equitable circumstances." *Satterfield*, 872 F.3d at 161-62. Where a Rule 60(b)(6) motion advances an actual innocence argument based on *McQuiggin*, the district court "should focus its

5

efforts primarily on determining whether [petitioner] has made an adequate showing of actual innocence to justify relief." *Id.* at 163.

## A. Whether the Rule 60(b)(6) Motion is Timely

A motion under Rule 60(b)(6) must be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1). Where relief is sought under Rule 60(b)(6) based on a change in law, the time period for reasonableness is measured from the date of decision. *Burton v. Horn*, 2018 WL 5264336 (E.D. Pa. Oct. 22, 2018). Generally, filing for relief under Rule 60(b)(6) more than a year after final judgment is untimely absent some extraordinary circumstance to excuse the movant. *Gordon v. Monoson*, 239 F. App'x 710, 713 (3d Cir. 2007). The Supreme Court issued its *McQuiggin* decision in 2013, and the Third Circuit decided *Satterfield* in 2017. Petitioner did not file the pending motion until July 31, 2020—nearly seven years after *McQuiggin* and three after *Satterfield*.

The affidavit from Lawrence Simons (discussed further below), which Petitioner submits to cast doubt on his conviction, was signed January 4, 2004. In it, Mr. Simons recants his testimony against Petitioner in a separate federal case from the 1982 in which Petitioner was charged with various drug offenses. Doc. No. 24 at 35. Petitioner does not state when he came into possession of the affidavit. But, Petitioner was on notice as early as 2005 that Mr. Simons had recanted his testimony because he relied on the affidavit in at least one other action. *United States v. Dawson*, 2005 U.S. Dist. Lexis 6122 (E.D. Pa. Mar. 24, 2005). If Petitioner wanted to make an actual innocence argument on the basis that the Simons testimony in the 1976 murder trial was also

6

perjurious, he had circumstantial evidence for that argument eight years before *McQuiggin* was decided, and certainly in 2013.[4]

Instead, Petitioner now contends the motion is timely because he filed it only four months after receiving the forensic tire track report. Because Petitioner relies on the cumulative "new" evidence to form his actual innocence argument, the delay does not appear to be so utterly unreasonable as to constitute a fatal flaw.[5]

## B. The Nature of the Change in Decisional Law

Petitioner seeks to re-open the federal petition based on a narrow exception to AEDPA's strict procedural bar. The exception to AEDPA's statute of limitations recognized in *McQuiggin* is grounded in the court's "equitable discretion" to ensure that innocent people are not incarcerated. *McQuiggin*, 569 U.S. at 392. Because the interest in preventing such a fundamental miscarriage of justice is so "deeply embedded within our system of justice," the Third Circuit has found that

---

[4] And indeed, Mr. Simons's recanted testimony was included in first federal habeas petition which was dismissed wherein Petitioner challenged a denial of a state petition as untimely.

[5] To the extent the Court construes the motion to also re-open the petition on the independent ground that there is newly discovered evidence, this claim is time-barred. Petitioner concedes that motions filed under Rule 60(b)(2) (governing newly discovered evidence) must be filed within a one-year timeframe. Doc. No. 24 at 7, 9. But Petitioner misconstrues when the clock starts: motions under Rule 60(b)(2) must be made "no more than one year after entry of judgment or order or date of the proceeding." Fed. R. Civ. P. 60(c)(1). This Court denied his request for habeas relief in 2011. It is nearly 9 years later that Petitioner has brought this motion. Petitioner initiated the pending motion in July 2020, almost a year after receiving Pearl Perkins' witness statement and 4 months after receiving the tire tracks report. Accordingly, his motion is not timely: the date of judgment and not the date of receipt of newly discovered evidence governs.

Perhaps aware that his motion based on newly discovered evidence is time-barred, he is fashioning the claim as a Rule 60(b)(6) motion, which is not subject to the strict one-year limitation. But a motion based on newly discovered evidence by any other name is still a Rule 60(b)(2) motion. *See Burton v. Horn*, 2018 WL 5264336, at *6 (E.D. Pa. Oct. 22, 2018) ("[T]he function of a motion, not the caption of the motion, dictates which Rule applies."). The Rule 60(b)(6) catch-all provision is designed as a gap-filler, where the requested relief is not available in the enumerated categories of (b)(1)-(5). When the requested relief does fall into one of those buckets, the catch-all provision is not available. *Walsh v. United States*, 639 F. App'x 108, 111 (3d Cir. 2016). Because the one-year limitation has expired, any independent claim based on newly discovered evidence is time-barred.

7

the rule in *McQuiggin* together with a "proper demonstration of actual innocence" should be enough to support relief under Rule 60(b)(6). *Satterfield*, 872 F.3d at 163.

### C. Whether Petitioner Makes an Adequate Showing of Actual Innocence

Petitioner will only overcome his time-barred petition if he can make a "credible showing of actual innocence." This is no simple task: Petitioner must persuade the district court that, considering the new evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* A court must "make a probabilistic determination about what reasonable, properly instructed jurors would do" when considering the new evidence. *Schlup v. Delo*, 513 U.S. 298, 299 (1995).

To support his claim, Petitioner must introduce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Consideration of "any admissible evidence is proper." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Here, Petitioner submits two pieces of evidence—a witness statement and forensic tire track report—neither of which were introduced at trial, nor allegedly disclosed to Petitioner during trial preparation. And, for good measure, he includes a 2004 sworn affidavit of Lawrence Simons, who had testified for the Commonwealth at trial. In the affidavit, Mr. Simons recants his testimony against Petitioner in a related case and states that he was "coerced...to lie." Doc. No. 24 at 32.

#### i. The "New Evidence"

Before weighing the sufficiency of the evidence, the Court must determine whether the evidence Petitioner submits is "new." Evidence is not "new" for purposes of establishing actual innocence "if it was available at trial, but a petitioner merely chose not to present it to the jury." *Goldblum v. Klem*, 510 F.3d 204, 226 n.14 (3d Cir. 2007). Here, Petitioner submits a witness statement from Pearl Perkins and a forensic tire truck report. The witness statement was taken on

8

November 5, 1975—the date of the murder for which Petitioner was convicted. Doc. No. 24 at 29. Although it is difficult to discern the exact date of the tire report, it appears to be dated November 6, 1975. Doc. No. 24 at 30. Petitioner alleges that the Commonwealth improperly withheld this information from him. That said, Petitioner attaches an affidavit from Joseph Rhone, Petitioner's co-defendant who is also currently incarcerated for the same murder charge as Petitioner. Mr. Rhone attests that the witness statement and report were included in *his* discovery materials and that he shared them with Petitioner's daughter in 2020. Doc. No. 24 at 36. This certainly suggests that it is doubtful that these materials were withheld from Petitioner as he prepared for trial.

Although the Court is not persuaded that the witness statement and report constitute "new" evidence, the Court will still consider whether it was more likely than not that no reasonable juror would have convicted him considering these two pieces of evidence.

First, Petitioner relies on Ms. Perkins' witness statement, given shortly after the shooting, to establish that the man the Commonwealth identifies as Petitioner "was in front of her house when she heard the shooting begin." Doc. No. 24 at 22. Petitioner thus argues that he could not have been involved in the shooting because he was down the street from where the shots were fired. Ms. Perkins informed officers that she saw a man on the corner of Bayard and Rumford looking north up Bayard Street. She then heard a noise which she first described as sounding like a car accident. She saw the man, who seemed to be waiting for someone, take off running across the street. Ms. Perkins then returned inside her house. Doc. No. 24 at 29. Notably, Ms. Perkins' description of the man on the corner overlaps with the testimony of Maria Cook—a witness for the Commonwealth at trial. Both women described the "brown hat" Petitioner was wearing at the time. Doc. No. 11-1 at 2 (Ex. A); Doc. No. 24 at 29. Ms. Perkins' statement could as easily be

9

taken to mean that Petitioner was waiting for an associate to pull the trigger—the narrative the Commonwealth put forward at trial when the jury convicted Petitioner.

The contents of the tire track report are, however, favorable to Petitioner. The report notes that the impressions removed from a Cadillac "do not compare favorably with photographs of tire impressions removed from the scene." Doc. No. 24 at 30. That said, the standard to establish actual innocence is not satisfied by creating a reasonable doubt in the light of new evidence, *Schlup*, 513 U.S. at 329; rather, it is whether no reasonable juror would have found the defendant guilty. Accounting for the contents of the tire track report, the jury would have had to accept that the officers pulled over the wrong green Cadillac which coincidentally contained a driver and passenger whose clothing descriptions matched those of two men who were just spotted on Bayard in connection with the shooting. The Court finds this alternative narrative to be certainly challenging for a reasonable jury to accept.

### ii. The Simons Affidavit

Petitioner's remaining proffered evidence is an affidavit from 2004 in which Lawrence Simons recanted his testimony against Petitioner in a separate drug case. Two issues are immediately apparent: first, the affidavit does not discuss the 1975 murder, the conviction for which Petitioner claims his innocence. Second, Mr. Simons has before been found an "incredible" witness by the court on the very issue of the affidavit's contents. After submitting two affidavits in which he described his alleged false testimony in the 1982 trial against Petitioner, Mr. Simons testified in an evidentiary hearing before, this Court's colleague, Judge Bartle of the Eastern District of Pennsylvania. Judge Bartle completely rejected Mr. Simons's about-face:

> In a word, we find his affidavits and testimony totally lacking in credibility. He testified falsely at the recent hearing that there was an undisclosed deal between him and the Government. Likewise, he testified falsely before us that he had lied at the 1982 trial about the drug organization of Dawson and Hoskins and their

10

> involvement in criminal activity. When not exercising his Fifth Amendment rights, his answers on the stand were often tentative and not in any way convincing. Simons simply did not exhibit the demeanor of a person telling the truth.

*United States v. Dawson*, 2005 U.S. Dist. LEXIS 6122, at *12-13 (E.D. Pa. Mar. 24, 2005).

Because Mr. Simons has already been found to lack credibility regarding his recanted testimony in 1982, and because Petitioner does not proffer any evidence about recanted testimony in the 1976 trial, it is unnecessary to conduct an evidentiary hearing to evaluate Mr. Simons's credibility.

At the same hearing, Judge Bartle credited the testimony of then Assistant District Attorney Andrea Foulkes[6], whom Petitioner now accuses of suborning perjury:

> In contrast, we find the witnesses who testified on behalf of the Government, [A.D.A] Andrea Foulkes, [F.B.I. Agent] James Sweeny, and [A.U.S.A.] Robert Welsh, to be completely believable. Unlike Simons, they presented honest and straightforward answers when questioned about Simons' cooperation with the Government in the case against Dawson and Hoskins. Each of these witnesses was unwavering in denying allegations of Government coercion or wrongdoing or any secret deal between Simons and the Government.

*Dawson*, 2005 U.S. Dist. LEXIS 6122, at *12-13. Petitioner does not appear to accuse Ms. Foulkes of having withheld the evidence he now seeks to introduce; rather, he submits the evidence was "improperly withheld by District Attorney McGill." Doc. No. 24 at 8. Nor is there anything in the present version of the motion detailing regarding Ms. Foulkes's involvement in the 1976 murder trial. Instead, Mr. Simons's affidavit accuses Ms. Foulkes of securing his false testimony in the 1982 drug offense trial against Petitioner.

---

[6] Ms. Foulkes is now an Assistant United States Attorney.

11

The Court credits the findings from the 2005 evidentiary proceeding. Judge Bartle did not appear to consider this a close issue. Because the validity of Mr. Simons's statements in 2004 are dubious, it carries minimal weight in the actual innocence analysis.[7]

### iii. Evidence Presented to the Jury

Any evaluation of the new evidence must be considered in light of what was presented to the jury and factored into the verdict. In affirming the conviction, the Superior Court of Pennsylvania referenced the eyewitness testimony of Maria Cook who identified Petitioner as the driver of a Cadillac, which was parked on Bayard Street and blocked traffic on the street. Ms. Cook described Petitioner as wearing a "short brown felt hat," which matches the description given by Ms. Perkins. Doc. No. 11-1 at 2 (Ex. A). The Commonwealth also introduced the testimony of Frederick Robb who, when leaving his home on Bayard, saw Petitioner and another man get out of the Cadillac and stand at the corner of Bayard. The Commonwealth's third witness, Robert Brown, testified that the victim emerged from his home on Bayard at which point Petitioner signaled to his companion. Doc. No. 11-1 at 3. The Superior Court then noted Petitioner and his

---

[7] Recently, the Third Circuit Court of Appeals had occasion to revisit *McQuiggin* and *Satterfield* on a Rule 60(b)6) motion. *Gerald Howell v. Superintendent Albion SCI, et al.*, No. 19-1780 (3d Cir. Oct. 21, 2020). The appellate court found the rare case in which a petitioner might credibly assert his actual innocence. There, three of the four witnesses put on by the Commonwealth have since recanted their testimony. A fourth individual—who appeared at petitioner's preliminary hearing but did not testify at trial—later confessed to the murder for which petitioner was convicted. *Id.*, slip op. at 2-3. The District Court concluded that the recanted testimony was unreliable "simply because they [were] recantations" and did not hold an evidentiary hearing to test this theory. *Id.*, slip. op. at 14. The Third Circuit disagreed: the substance of multiple recantations—two of which directly implicated the confessor—warranted more than a cursory dismissal. The appellate court vacated the denial of the petitioner's Rule 60(b)(6) motion and remanded for an evidentiary hearing on the new evidence. *Id.*, slip. op. at 18.

This is not that case. Although the Court finds that an evidentiary hearing is not necessary, it has not neglected to evaluate the reliability of the proffered new evidence. Critically, the reliability of the "recanted" testimony has already been examined in an evidentiary hearing and Mr. Simons has been found to be incredible. Nor was the "recanted" testimony given in Petitioner's murder trial; rather, it was offered in a separate drug offense trial nearly six years later. Finally, it is doubtful that the proffered evidence is actually "new," although the Court does not rest its decision on this point.

companion "ran to the decedent" and "fired thirteen bullets into his body." Doc. No. 11-1 at 3. Petitioner and his companion returned to the Cadillac and were arrested approximately 19 minutes later. Doc. No. 11-1 at 3.

The Commonwealth also introduced testimony from police officers that they had observed Petitioner, his co-defendant, and the victim together the day before the shooting. Doc. No. 11-1 at 9. This testimony went to the conspiracy charge and to establishing an association between the victim and the defendants.[8] Doc. No. 11-1 at 10. Finally, Lawrence Simons testified that Petitioner had hired him to kill one of the Commonwealth's witnesses after the witness identified Petitioner. Doc. No. 11-1 at 7.

Collectively, the testifying witnesses placed Petitioner near the crime scene, described the clothes Petitioner and his associate wore at the time and the green Cadillac Petitioner was driving when officers stopped him shortly after the shooting, and established Petitioner and the victim knew each other. The Superior Court found enough evidence to infer Petitioner's "leadership role" in "dispatch[ing] the others to do the shooting." Doc. No. 11-1 at 11.

Accounting for the "new evidence," the Court is not persuaded that no reasonable jury would have found Petitioner guilty. Petitioner has not made a credible showing of actual innocence.

### iv.    The Request for an Evidentiary Hearing

To fully supplement the factual record, Petitioner requests the Court order an evidentiary hearing. The Court is not obligated to do so and there are obvious drawbacks to granting that request: first, the intervening 45 years between Petitioner's first trial and this motion cannot be

---

[8] The officers testified in plain clothes and were not identified to the jury as police officers. The Superior Court concluded this was not an abuse of discretion as the testimony went to establish an overt act by alleged co-conspirators. Doc. No. 11-1 at 9-10.

understated. Not only is memory loss a significant consideration which often undermines credibility, it is highly likely that witnesses are unavailable. For example, Ms. Perkins was born in 1925. Doc. No. 24 at 29. Second, the Court need not grant an evidentiary hearing when it would be futile to do so. To the extent the Court could order a hearing specifically to address Mr. Simons's recantation of his testimony against Petitioner, Mr. Simons's credibility was already considered in the evidentiary hearing before Judge Bartle. Petitioner provides no evidence to show Mr. Simons has become more truthful or compelling since the finding by this Court's colleague.

Petitioner also submits that an evidentiary hearing is necessary to test the credibility of then-Assistant District Attorney Andrea Foulkes given her alleged "history of allowing false testimony." Doc. No. 24 at 24. As noted, at that same 2005 hearing, Judge Bartle credited the testimony of the Commonwealth witnesses. To argue that Ms. Foulkes has since been found to have exchanged pleas for perjured testimony, Petitioner refers to supposed articles from the *Philadelphia Daily News* and *Harrisburg Patriot News* which ostensibly discredit Ms. Foulkes but Petitioner does not include the publication date, title, or author. The Court was unable to track down these articles—to the extent they exist—nor does the Court find them necessary. Judge Bartle evaluated Mr. Simons's and Ms. Foulkes's credibility and the Court respects his findings here, coupled with the complete absence of any reason to conclude otherwise. Accordingly, the Court denies Petitioner's request for an evidentiary hearing.

### D. Additional Equitable Circumstances

Given the Third Circuit's instruction that the change in law announced in *McQuiggin* carries significant weight, the Court's primary concern is whether Petitioner has made the threshold showing of actual innocence. The Court may also consider other equitable factors, although these will be accorded less weight.

14

"When more time has elapsed since the final conviction, a court will give more weight to the state's interest in finality." *Satterfield*, 872 F.3d at 164. Petitioner was convicted in 1976 and brings this motion in 2020. Of course, the passage of nearly 45 years is by no means a bar to relief, provided Petitioner makes the threshold showing of actual innocence. The Commonwealth's interest in "finality and comity," *Cox v. Horn*, 757 F.3d 113, 125 (3d Cir. 2014), is rightfully balanced against the "fundamental right not to be wrongfully convicted," *House v. Bell*, 547 U.S. 518, 536-37 (2006). But, as noted above, the Court does not find that the requisite showing of actual innocence was made here.

As an additional equitable factor, the Court may consider Petitioner's ineffective assistance of counsel claim. *Satterfield*, 872 F.3d at 164; Doc. No. 14. at 5. The Supreme Court has yet to hold that a petitioner is entitled to habeas relief upon a freestanding claim of actual innocence. *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993). Instead, a showing of actual innocence opens the door for a petitioner to assert a constitutional claim—such as ineffective assistance—notwithstanding a procedural bar. *McQuiggin*, 569 U.S. at 392. A colorable claim for ineffective assistance of counsel requires a showing that counsel's performance fell below the constitutional minimum and that such error prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668 (1984). Here, Petitioner contends that his counsel failed to argue that his conviction was obtained in violation of the Interstate Agreement on Detainers Act, Pub. L. No. 91-537, 84 Stat. 1397 (1970). Doc. No. 1.

To the extent Petitioner's counsel erred, it had no bearing on Petitioner's conviction challenged here. Counsel's advice to waive Petitioner's rights under the Detainers Act was provided *after* Petitioner was convicted in 1976, granted a new trial, and again convicted. Petitioner's rights under the Detainers Act were only implicated in 1982 when federal authorities

arrested Petitioner on a series of drug charges. Doc. No. 11-1 at 3-4. Petitioner does not claim that counsel failed to investigate or present exculpatory testimony at trial—which would support the actual innocence exception. Accordingly, despite Petitioner raising an ineffective-assistance claim, the Court does not find that such a claim weighs in favor of finding an extraordinary circumstance.

Accordingly, the additional equitable factors are by no means so significant as to alter the analysis absent a threshold showing of adequate innocence.

### III. Equitable Tolling

Petitioner also seeks relief from the Court on the grounds that his petition was subject to equitable tolling under AEDPA's statute of limitations. So doing, Petitioner revives an argument previously considered and rejected by this Court. Magistrate Judge Hey found that Petitioner failed to demonstrate "extraordinary circumstances" to warrant equitable tolling. Specifically, Petitioner's claim that he was given erroneous advice by counsel concerned only the filing of his state PCRA petition; it had no bearing on the filing of the federal petition. And, Petitioner failed to establish diligence, given that he waited nearly five years after the PCRA litigation concluded to file his federal habeas petition. Doc. No. 14. at 9-10. This Court adopted the Magistrate Judge's findings, Doc. No. 16, and the Third Circuit Court of Appeals affirmed, Doc. No. 17. To the extent the pending motion advances an argument for equitable tolling not already considered and rejected by this Court in 2011, the remaining contentions are considered—and rejected—as part of the actual innocence claim.

## CONCLUSION

For the reasons set out in this memorandum, the Court denies Mr. Waliyud-Din's motion to alter or amend judgment and enters the accompanying Order.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE